Good morning, your honors. Counsel, may it please the court, my name is Amy Mijovic-Samanovich, for the Plaintiff Appellant Joseph Chavez in this matter. This matter does have a lengthy history, having originally proceeded to arbitration in 2013 and 2014, followed by an arbitration decision that was taken to the commission for review, and then to the Circuit Court of Cook County where Judge Hanlon remanded the matter back down. There was a subsequent commission remand decision, and then it was taken up to the Circuit Court again by Judge Walker, who confirmed that decision. The plaintiff in this case presented evidence of his 30-year exposure to the known carcinogen of diesel engine exhaust, as well as expert testimony supported by scientific studies, but this chronic exposure led to his development of bladder cancer. The relevant facts as contained in the commission decision and opinion on review are not in dispute. There was no evidence offered to dispute the conditions under which the plaintiff worked, his diagnoses, and his subsequent treatment. However, the plaintiff argues that the commission's assessment of these facts, especially the medical causation opinions, were not made under the proper legal standards. The arbitrator found that the scientific studies were inconclusive on the link between diesel engine exhaust and bladder cancer, whereby it did not meet the convincing level required for the preponderance of the evidence standard. Whether the plaintiff is required to submit 100% epidemiological certainty that diesel engine exhaust causes bladder cancer is a question of law for the court. The case law tells us that inconclusive scientific evidence on the link between... Why isn't this manifest way to be evident? I don't believe... Don't we have a doctor saying this and a doctor saying that? I don't believe so, Your Honor, and I would direct your attention to the Bagot case, because whether a claimant must prove certain elements to establish a compensable claim is purely a question of law for this court. If we look at... What did Dr. Conover have to say? I'm sorry, Your Honor. What did Dr. Conover have to say? What did Dr. Conover have to say? He said there was no causal connection. So what she testified... Back to you. She cited to... Her opinion for causal connection was based on some four different scientific papers that she looked at. She cited to the World Health Organization, International Agency for Research on Cancer, and the National Toxicology Program to support her opinion that epidemiologists and toxicologists have looked at these studies and decided that the strength of the association is not there, indeterminate, or inconclusive. And what I would posit to Your Honors is that expert opinions are only as valid as the facts underlying them, and this is not what the scientific studies actually say. The fact is that all of the articles placed into evidence cite studies that found an increased risk of bladder cancer with any level of exposure. Well, let's assume that that is perfectly true. As I'm looking at the case law, the case law in U.S. Industrial Chemical doesn't require a certain level of quantitative evidence, nor does it prohibit somebody from introducing evidence that it didn't rise to a certain level. As I understand, Conover, she's saying that the claimant was in the intermediate group for exposure to diesel exhaust in determining the causal connection. Therefore, it was her considered opinion that it was not related to the work. Exposure. So what's wrong with that opinion? The opinion, first of all, is flawed because there's no evidence as to support the opinion that he was in the intermediate versus the highest exposure group. She did not actually have any familiarity with the configuration of the premises and thus the exposure of the claimant in this case. If you look at her testimony, she had no idea when the ventilation system was installed, what the ventilation system did, and how much diesel engine exhaust he was actually claiming to have been exposed to. So my first point would be that this is arbitrary distinction that he's placed in from intermediate into the highest exposure level. And my second argument would be that a claimant does not have to prove himself in the highest exposure level in order for the claim to be compensable under the claimant case and the U.S. Industrial Chemical case. So what did you claim? Was it your burden? What did you claim in that classification that the client was? Our burden was met by the evidence that the claimant in this case was exposed to diesel engine exhaust, a known carcinogen in the same category as asbestos, for 46 hours of every single work day for 30 years. Now, he was a mechanic, right? He was a diesel engine mechanic. So why was he exposed 46 hours a day? Sure. Well, let's follow up on my question. So that's evidence that you presented, right? Yes. Okay. And in that, I assume you asked Dr. Conover, assuming those to be truthful facts, okay, that where would Dr. Conover put someone in those levels of exposure? She, again, referred to the scientific studies stating that if you're in the highest exposure group, there is an association. She admits that in her testimony. Okay, that's the review of studies. But didn't you ask her? I'm sure you did. Where would my client be placed? She could not speak to him specifically. Why? She could only speak to the studies that provide people in similar employments are generally in this particular group. But she did not have the necessary facts to opine as to him specifically. She speculated that he would be in the intermediate group based on other studies than her testimony group. What facts were there missing for her to be able to answer that question? What facts were missing for her to place him in a certain group? Yeah, you're saying she didn't have the facts. Well, she had no knowledge as to what his exposure actually was on a day-to-day basis. Oh, but you did, didn't you? Correct. And you didn't present them to her? Of course, but when you ask her those questions, again, you'll see in her testimony that she refers back to the studies that say these particular types of employment for other types of mechanics or coal miners that have been tested, this is where they have generally been placed. Look, you didn't move to strike her testimony because it was incompetent as an expert opinion, did you? No, Your Honor. Then all the things you're talking about go to the weight of her opinion. Who determines the weight of the opinion? The commission determines the weight to be given of the opinion, and in determining the weight to be given the opinion, they did not actually do this in terms of weighing one expert versus another. If you look at the commission decision, she states, the scientific studies are inconclusive and limited evidence does not meet the convincing level of evidence. Well, that's what Conover said. This is what the commission found. Didn't Conover say that? Didn't Conover testify that the studies are inconclusive and do not establish an association? After acknowledging that there were studies that showed a positive association, she said, when you take the body of literature as a whole, it does not show an association that is considered to be reliable, and then gave her reasons for it. And she went through four other studies, and on the intermediate level, she testified that the only people that are in the highest level are below ground miners, underground construction workers, and people that work above ground, including mechanics and a shopper in the intermediate level. This guy was a mechanic and a shopper. Now, the commission could have determined that she wasn't credible. That was their right to do. But in weighing her testimony, they found her credible, and they based their opinion on it. So why can't they do that? Well, because it's one that's not what the studies actually say. So there's nothing that she points to where they actually say that. She says that the IARC says that. So look at what the IARC actually says. The IARC has four categories to evaluate evidence reliability. What's the IARC? The IARC is an organization of the World Health Organization, International Agency for Research on Cancer. Thank you. Yes. Sorry. And in 2012, they looked at this, and they decided that they report diesel engine exhaust is a carcinogen to humans in the same group as asbestos. And then they look at specific organs or tissues, and they have four categories for that. Sufficient evidence of carcinogenicity, limited evidence of carcinogenicity, inadequate evidence of carcinogenicity, and evidence suggesting a lack of carcinogenicity. Now, Dr. Kiver would have you believe that the IARC went with Category 3, inadequate evidence of carcinogenicity. But that's not what they did. The IARC went with Category 2, which is, quote, a positive association has been observed between exposure to the agent and cancer for which a causal interpretation is considered by the working group to be credible. So the IARC actually finds a credible association between exposure to diesel engine exhaust and bladder cancer. At any level, if you're exposed 10 minutes a day? There is no information in there as to the level of exposure. Explain to me, I'm always having trouble with this, limited. Then why did they use the word limited? Because I think you want to take it out. Because it is still under review. They are still studying this, and they've been studying it for decades. And the epidemiological evidence may not be unequivocal, but it doesn't need to be under the case law in the state of Illinois. Is there anything in the first category? Is there anything in the sufficient evidence, lung cancer, and diesel engine exhaust? Is that what you're asking? You have three categories here. You have inadequate, which they're using the category of inadequate. They have limited, and what's the other category? There's four. So four. There's sufficient, limited, inadequate, and lack of. Okay. So there is sufficient evidence of the association. There is a stronger connection between bladder cancer and lung cancer. There is a limited association that they're finding credible between diesel engine exhaust and bladder cancer. And the NTP article actually finds the exact same thing, again, without reference to these levels of intensity of exposure. I don't know where she gets this from. It doesn't have a certain tool of appeal. I understand you're saying exposure to the levels of diesel exhaust with reference to certain cancers is a causal connection, and a more greater likelihood of getting this. But I'm getting hung up on you saying that being a miner or engaging in underground construction, it doesn't matter, or a mechanic who's exposed for ten minutes a day automatically wins the case. How come the amount of exposure, in your opinion, has nothing to do with this? Because I believe that the case law from Freeman supports this, and U.S. Industrial Chemicals supports this. Supports what? Supports that anybody exposed for even two minutes a day who ends up with bladder cancer should recover. Correct? In reference to the time, the statute states that exposure can be for any length of time, however short, and the defendant must be the employer. Well, wait a minute. Hold on. Hold on. You're right. The exposure can be for any length of time, provided you can prove that the exposure for that length of time bears a causal relationship to the condition of ill-being. And there's nothing wrong with the respondent in this case introducing evidence that quantitatively this guy was not exposed to sufficient diesel fumes to result in bladder cancer. You could introduce all sorts of evidence, if you wanted to, that exposure for the period of time that he was exposed is sufficient. And then it becomes the question for the commission to determine who they're going to believe. But this business that you don't need to establish a quantitative amount, yeah, that's a true statement, provided you can establish that the quantitative amount is sufficient to make a causal relationship. So, I mean, you're arguing an apple and the issue is an orange. I think the argument that's being made by the respondent in this case, Your Honor, is that it has to do with medically significant exposure and an argument that the Supreme Court in Freeman United Coal Mining already rejected. I would also argue that if you look at what we have proven with Dr. Deigel's testimony, the urologic surgeon who did diagnose this, opined that it was chronic exposure every workday for 30 years, that he's actually taught this in the gold standard textbook for urology, that they teach urologists, medical students, to take on urology. That's for the commission to decide. There's no doubt that if the commission had ruled for you, it would not be against the manifest weight of the evidence. But you argue this as if there's a right answer when you're talking about manifest weight. As long as there is competent evidence in the record to support the commission's decision, we have to affirm it, whether there's contrary evidence or not. So you had an expert that says causal connection. They have an expert that says no causal connection. Here's my reason why I say no causal connection. Your expert says here's my reason why I say causal connection. And the commission chooses the respondent's expert as being the one that carries the day. Now, if you could eliminate the testimony because it was incompetent, she would move to strike it, and then it takes it out of the record. For instance, and I use this example a little too often, if the expert says I base my opinion on my consultation to the entrails of chickens, and we would turn around and say that's nonsense, that's not an expert, you're out, that's it, it's all gone. But in this case, she said why she did. And there's nothing you can argue that there's literature that goes contrary to her opinion, but she still says the body of literature taken as a whole does not show an association that's considered to be reliable. And it was for the commission to decide whether that was credible. And if that was what the commission had based their decision on, I could understand that argument. But the commission's conclusion was actually that the epidemiological studies are not yet conclusive. And that is what I'm taking issue with in terms of the legal standard that we're being held to. Conclusivity. Pardon? The legal standard of what constitutes conclusivity. And that is what you will see Judge Hanlon also took issue with, is that we were being held to a higher standard of proof by requiring us to put in 100% epidemiological certainty of the association between bladder cancer and diesel engine exhaust. You were not required to do that. You were not required to introduce quantitative evidence to prove causal connection. But they weren't required to put in quantitative evidence to disprove it. You had evidence to prove it. They had evidence to disprove it. The commission had to make a choice. And they did. If you look at the commission's conclusion, in holding Quinton failed to prove by a preponderance of the evidence that he sustained accidental injuries or was exposed to an occupational disease that arose out of and in the course of his employment, the commission heavily relies on its incorrect statement of law that the limited evidence is not sufficient to meet the standard of a preponderance of the evidence. This is Judge Hanlon's decision. Hold on. We don't review Judge Hanlon's decision. We don't care what Judge Hanlon said. We review the commission's decision. What did they say that was wrong the second time around? The first decision or the second? The second decision. The second decision because we're reviewing the original commission decision in opinion on review under a mobile, correct? No, not necessarily. Okay. Because she sent it back, and I don't understand where she got the authority to do this. She sent it back for a do-over. And we don't give do-overs. The circuit court doesn't give do-overs. They either confirm the decision or they reverse it. Counsel, let me read to you what the second commission decision says. It says, Petitioner did not testify as to the extent of the diesel exhaust exposure he experienced during his employment, nor did he identify what solvents he used that would present a risk of bladder cancer. To the extent to which there is evidence of an association between bladder cancer and diesel exhaust, it is likely in the highest exposure groups. Petitioner's job would be classified in an intermediate group. The evidence does not clearly support a relationship between diesel exhaust exposure and bladder cancer for the above reasons the commission reaffirms the arbitrator's decision. And again, my issue with that is that the Supreme Court has explained to us in Freeman United Coal that whether the claimant was actually exposed to coal dust and whether it was medically significant are not determinative of the employer's liability. The Supreme Court in the statute in this case tells us that that focus on the intensity of exposure that you find in every sentence of that commission decision conclusion is improper. And I would also posit to you that the Supreme Court looked at that case de novo, like I'm asking you to look at this case today. Very good. I thought you'd go way beyond your time. I'm sorry. It's an interesting case. Okay. Counsel, you may proceed. Good morning. Could you go right to that last point that she was concluding with? Yes, sir. Good morning. Good morning. Can I please record? Counsel. Thomas Gale on behalf of Appelli, Pace Suburban Bus. And flipping to the last issue, she's addressing Freeman Coal, coal miners pneumocosis. Pneumoconiosis. Pneumoconiosis. Yes, Your Honor. Sorry for the mispronunciation. And then referencing back to the Act and saying that that case proves that looking at the extent of exposure is improper. However, that case is actually in the Act under the coal miners section, which is what many paragraphs below the three paragraphs that outline the Occupational Diseases Act. The legislature has, in fact, enacted a way to analyze coal miners and their exposure to coal dust because of the prevalence of that condition. Different than the occupation here? Is that what you're saying? It's within the Occupational Diseases Act, but it specifically says for coal miners exposed to coal dust. And within this, in a paragraph just above or below that paragraph, it also addresses radiation poisoning. And it addresses the levels of proof of radiation poisoning. When it's not specifically identified by the Act, you refer to the analysis that this commission probably performed. Which is? Upon consideration of all the circumstances, including this plaintiff's exposure, this plaintiff's employment, the conditions under which this plaintiff performed their work, and this plaintiff's disease, the commission concluded that for a call of connection to be apparent to the rational mind, the exposure, employment, and working conditions must be in the highest exposure group. That was based on the factual findings relative to the medical experts, the ballot experts. The factual findings between petitioner's, plaintiff's testimony on direct examination compared to his testimony on cross-examination. And resolving the disputes therein. And in addressing the expert opinions also addresses the medical literature. I submit to you that this should not be... If I'm to understand you correctly, when we talk about pneumoconiosis and radiation exposures, they're kind of carved out from this general occupational disease. Yes, Your Honor, they are carved out from this general occupational disease. Or perhaps because the science and metrics of exposure are more reliable or more unitary in the theory of these particular substances or exposures really without question cause this harm. Correct, Your Honor. For a U.S. industrial chemical company, what was the mechanism of injury alleged there? Was it radiation? Was it coal dust? Or just chemicals? It was exposure to chemicals. And initially to point out, it wasn't a big manifest weight. And the court looked at whether or not a failure to show evidence of the specific chemicals to which the plant was exposed were sufficient reason to overturn on the manifest weight. And they said the plant didn't have to identify the specific chemicals to which it was exposed. They also said it was not necessary to provide specific quantitative evidence of amount, time, and duration of exposure of the chemicals. Correct? That's what she's arguing here. Why do we have to prove the amount of exposure, the time of exposure? What occurred on appeal in that case was the employer appealing the decision of the commission. And what the court ultimately concluded was that the commission could have reasonably found causal connection in reliance on the expert medical testimony. Could have reasonably inferred that the medical expert's testimony showed it could have been caused by the fume exposure. And that the expert believed smoking was not an account for all the ailments. In reaching the conclusion that they did not, that the plant, that the employee was not required to insert certain elements of proof was in addressing the employer's argument. Wherein they're saying, we believe the medical experts. We believe the basis for the medical experts. The employee doesn't have to prove further. All right, so what they're saying is, we're back to what Justice Hoffman alluded to. Obviously, if it goes in and it's antibiotic, the employer doesn't, the employee doesn't have to prove the amount, duration of exposure. However, it doesn't preclude the commission from hearing expert testimony on the other side. That is correct. Correct? That is correct. It's not a Ray Zipsa case. They're allowed to present evidence. Correct. Okay. Did we throw you off your stride here? Not at all, Your Honor. I'm trying to decide if I have anything further. If Your Honor has any further questions. Just to briefly address the, a couple of counsel's points on doctors versus doctors. When questioned about doctor versus doctors, the argument was immediately turned to the weight of the doctor's testimony. This is not a de novo review, Your Honor. This should be the manifest weight review. And the doctor's opinion is well supported as outlined by the 28 pages in findings of fact produced by the commission on remand. One final point, if Your Honor has no further questions. When counsel refers to limited evidence of a link. The quote from the IARC press release that counsel alludes to leaves off the definition page. I believe it's the second page of that press release where it says bias and confounding could not be ruled out with reasonable confidence. The bias and confounding could not be ruled out with reasonable confidence. Bias and confounding. The bias in studies and the confounding of other factors could not be ruled out with reasonable confidence. That is the distinction. That is where the difference lies. It's not that a limited evidence makes any exposure to diesel exhaust or fumes, diesel exhaust, a compensable case when you're diagnosed with cancer. If that were the matter, as counsel pleads, anyone with any level of exposure would be inclined to claim benefits for any cancer. Respectfully submit that the commission has correctly analyzed all of the circumstances in this matter and reached the correct decision. Thank you, Your Honor. Thank you, counsel. Counsel, you may reply. Hey, still not tired? Well, we'll give you, you took less time. Okay. I first would say that while I maintain this is a question of law, because on page 28 of the premed decision even, there is no sentence in there that says we looked at the two expert doctors and we find one doctor more credible. Every sentence relates to the intensity of exposure, not picking one doctor over another. But if we're talking about manifest weight, I think we have still met our burden that the finding is against the manifest weight of the evidence. And one of the main things I want to point out to you that hasn't come up yet today is the meta-analysis of the 35 studies that found an increased risk in all exposure groups. Okay? So they found a 1.23 increased risk for any exposure and 1.44 for high exposure. That is the scientific study that's relied upon by Dr. Dybald, the urology textbook that teaches him this. The fact that Plaintiff in this case had no other risk factors admitted by Dr. Conover, no other risk factors for the development of his cancer. And for those reasons, I do believe that Petitioner did meet his burden of proof in this matter. Thank you. Thank you, counsel, both for your arguments in this matter. This will be taken under advisement. The written disposition will eschew. The clerk will stand and brief recess.